IN THE MATTER OF THE ADMINISTRATION OF THE ESTATE OF ELUID (ELLIOTT) LOUIS ALSTON, DECEASED
— AND —
CHARLIE D. CLARK, JR., ATTORNEY AT LAW, ROANOKE RAPIDS, N. C.

No. 706SC648

(Filed 16 December 1970)

1. **Appeal and Error § 7; Attorney and Client § 3— dismissal of meritless appeal by attorney — attorney acting in self interest**

    The Court of Appeals dismisses as meritless an attorney's appeal from a proceeding wherein the clerk of superior court proposed to qualify a personal representative for the estate of a minor decedent, where the record on appeal disclosed (1) that the attorney had not been retained either by the estate or by the parents of the decedent and (2) that the attorney was acting solely in his own pecuniary interest in intruding into the affairs of the estate.

2. **Executors and Administrators § 9— management of the estate — right to hire attorney**

    Until a personal representative is appointed for the estate, there is no right to retain an attorney to represent the estate. G.S. 28-172.

THIS is a purported appeal by the above-entitled Estate and the Next of Kin and James R. Walker, Jr., as an attorney and Individually from an order entered by *Joseph W. Parker, Judge Presiding,* at a hearing held in the HALIFAX County courthouse on 7 July 1970.

The record in this case is unique.

The following facts are gleaned from the record:

1. Eluid (Elliott) Louis Alston (hereinafter referred to as deceased son) came to his death on 5 December 1969 while riding as a passenger in an automobile driven by his brother, who was also killed in the same automobile wreck. The automobile was covered by a liability insurance policy, and the estate of the deceased son apparently had a cause of action for wrongful death.

2. The deceased son was 19 years old, unmarried, and was survived by his parents, Emmett Alston (Father) and Oliva Alston (Mother).

3. In the latter part of the month of December 1969 Father and Mother went to the home of James R. Walker, Jr. (Walker) where Walker maintains a law office. They took with them the automobile liability insurance policy and sought legal advice from Walker. They apparently had previously been in communication with the insurance adjuster for the automobile liability insurance company, and they wanted the advice of Walker pertaining thereto. They did not leave the policy or any other information with Walker with regard to the name of the insurance adjuster they had been dealing with.

4. Father and Mother informed Walker that the insurance adjuster was coming to see them on Wednesday, 4 March 1970, and that they would bring the adjuster to the office of Walker. The adjuster did arrive at the home of Father and Mother on Wednesday, 4 March 1970, but instead of returning to the office of Walker, Father went with the adjuster to Roanoke Rapids where Charlie D. Clark, Jr., an attorney, maintained an office; and they saw Clark in his office.

5. Walker apparently learned of this and also learned the name of the insurance adjuster, because on 6 March 1970, Walker wrote the insurance adjuster to the effect that he represented the estate of deceased son and offered to settle the case for $10,000. In this letter Walker stated that Father "has

a serious psychiatric problem." In this same letter Walker made it appear that Lawrence G. Cooper was the Administrator of the Estate. Walker also claimed that he was the attorney for the estate and it would be improper for a settlement to be made with anyone else. On the next day, 7 March, 1970, Walker wrote Father informing him that Father had broken his promise about bringing the insurance adjuster to see him and stated in this letter:

> "Also, I inform you that I will not release this case to any other lawyer in the State of North Carolina and you might as well stop trying to find a lawyer to take the case away from me. I am informed that that is what you have been trying to do.

> If the reports are true, you will be five or six years trying to settle this case because I will not let you do what you have in mind without filing attorney's liens, breach of contract actions, and proceedings under G.S. 35 Article 2, and before the Insurance Commissioner."

6. On 17 March 1970 Walker filed an application for a citation to show cause. This was filed with the Clerk of Superior Court of Halifax County. In this application Walker sets out that he is an interested party in the estate for that he had been employed by the next of kin under a contingency fee agreement to file such actions and make such settlements as may be in the best interest of the estate; that he had negotiated a settlement in the amount of $9,000; that the next of kin have the right to administer the estate but have refused and failed to apply for letters and likewise had refused to execute a renunciation of their rights to qualify and nominate Lawrence G. Cooper as they had previously agreed to do; and he requested a citation to the next of kin to show cause why they should not be deemed to have renounced their rights to administer the estate.

7. Pursuant to the above application, the Clerk of Superior Court on 17 March 1970, issued a citation to Father and Mother to show cause within 20 days why they should not be deemed to have renounced their right to administer the estate and in default thereof letters of administration would be issued to some other person.

8. Immediately upon receipt of the citation, Father and Mother, on 18 March 1970, went to the office of the Clerk of

Superior Court in response thereto. The Clerk advised them that they would be notified of the time of hearing. On 19 March 1970, the Clerk of Superior Court notified Father, Mother and Walker that the hearing would be held on 25 March, 1970 at 10:00 o'clock a.m. At 9:30 a.m. Walker telephoned the Clerk of Superior Court and advised him that he would not appear at the hearing because he had gone to the home of Father and Mother the preceding evening and on that occasion Father "had lost his rational and emotional balance" and that it would be unsafe to hold the hearing. Father and Mother did appear for the hearing with their attorney, Clark. Both Father and Mother denied that they had ever employed Walker or had ever agreed to renounce their right to qualify to administer the estate. Thereafter, the Clerk of Superior Court notified Walker that the hearing had been held and that he proposed to qualify Mother as personal representative of the estate on Thursday, 2 April, 1970.

9. On 1 April 1970 Walker filed a notice and exceptions to the hearing held before the Clerk. Subsequently, Walker gave notice of a purported appeal from the findings of the Clerk and the proposed action of the Clerk to appoint a personal representative for the estate.

On 8 June 1970 Judge Copeland was holding a session of Superior Court in Halifax County. Walker appeared and made a motion and a request for findings of fact and tendered a judgment. Judge Copeland refused to sign the tendered judgment and Walker gave notice of appeal to the Court of Appeals. In the record as presented to this Court, it is made to appear that Judge Copeland signed the tendered judgment and the appeal entries are omitted.

Thereafter, Father and Mother, through their attorney, Clark, arranged with Judge Parker, the Resident Judge of Halifax County, to have a hearing on a motion to dismiss the purported appeal filed by Walker. Judge Parker held a hearing in Halifax County on 7 July 1970 after proper notice to Walker. Walker again failed to appear. Judge Parker made full and adequate findings of fact and based thereon ordered that this action be dismissed and that the Clerk of Superior Court of Halifax County proceed to qualify a personal representative for the estate. It is from this order that the present appeal was taken.

---

In re Alston

---

*James R. Walker, Jr., for appellants.*

*Charlie D. Clark, Jr., for appellee.*

CAMPBELL, Judge.

[1] It is obvious from the record filed in this case that this appeal has no merit. Whatever matter was pending in the Superior Court was based upon the application filed by Walker on 17 March 1970 for a citation to show cause. Walker had no standing to file such an application under the provisions of General Statutes 28-15. Walker was never the attorney for the estate as no personal representative was appointed until 7 July 1970, when Oliva Alston, Mother, was duly appointed and qualified.

[2] Until a personal representative was appointed for the estate, no one had the right to retain an attorney to represent the estate. G.S. 28-172; *McIntyre v. Josey*, 239 N.C. 109, 79 S.E. 2d 202 (1953); *Spivey v. Godfrey*, 258 N.C. 676, 129 S.E. 2d 253 (1963). Not having been retained by the personal representative of the estate, Walker had no authority to conduct negotiations with the insurance company or to arrive at any settlement on behalf of the estate.

The record discloses that Walker nowhere contends that he has been retained by the personal representative of the estate. At most, Walker contends that he had some kind of an agreement with Father and Mother. There is, however, no evidence in the record before us to substantiate even this claim. The record discloses that both Father and Mother denied ever having employed or retained Walker. The record discloses that both Father and Mother did talk at one time with Walker and sought his legal advice and offered to pay him for same at the time. They did not go back to see him as they apparently were not satisfied with his services. Conceding that Father and Mother did consult with and seek legal advice from Walker, the subsequent conduct and actions of Walker, as revealed from this record, justified both Father and Mother discontinuing any further relations with Walker. The record reveals every effort being made by Walker to intrude into a situation where an attorney's fee might be obtained. This record indicates a complete lack of knowledge of law and legal precepts on the part of Walker, or if not ignorant, then the conduct of Walker in this instance reveals a complete disregard of the duties owed a client by an attorney. In either event, Father and Mother were

well advised when they discontinued any further association with Walker.

The record in this case was distorted, incomplete, inadequate and was never served on opposing counsel.

It would appear that the actions of Walker in this case have not been in the best interests of his purported clients, but to the contrary have been taken only to further the personal interest of Walker. The record reveals that Walker has been given every opportunity to appear in hearings held before the Clerk of Superior Court of Halifax County and before Judge Parker and that every effort was made to afford him an opportunity to present his views and contentions. Despite all of this, Walker failed to appear.

This appeal deserves to be, and is

Dismissed.

Judges BRITT and HEDRICK concur.